UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────────

SHARON KOSZUTA,

                                        Plaintiff,

                        -vs-                                        14-CV-694-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.

─────────────────────────────────────────

APPEARANCES:    LAW OFFICES OF KENNETH HILLER (TIMOTHY HILLER, ESQ., of
                Counsel), Amherst, New York, for Plaintiff.

                WILLIAM J. HOCHUL, JR., United States Attorney (JOSHUA
                LENARD KERSHER, Special Assistant United States Attorney, of
                Counsel), Buffalo, New York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of United States District Judge William M. Skretny dated October 8, 2015 (Item 21).

        Plaintiff Sharon Koszuta initiated this action on August 22, 2014, pursuant to the

Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's

application for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI")

benefits under Titles II and XVI of the Act.   Plaintiff has moved for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Item 10) and

the Commissioner has cross-moved for the same relief (Item 19).   For the following

reasons, plaintiff's motion is denied and defendant's motion is granted.

## BACKGROUND

Plaintiff was born on January 5, 1958 (Tr. 133).[1]  She protectively filed applications for DIB and SSI on April 18, 2011, alleging disability due to arthritis and carpal tunnel syndrome with an onset date of March 1, 2009  (Tr. 133-141, 154).   The claims were denied administratively on August 3, 2011 (*see* Tr. 86-92).  Plaintiff requested a hearing, which was held on November 28, 2012, before Administrative Law Judge ("ALJ") David S. Lewandowski (Tr. 34-77).   Plaintiff appeared and testified at the hearing, and was represented by counsel.  Additionally, the ALJ took the testimony of a Vocational Expert ("VE").

On December 17, 2012, ALJ Lewandowski issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 19-29).   Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff had the following "severe" impairments: osteoarthritis of both knees, chronic obstructive pulmonary disease ("COPD"), and carpal tunnel syndrome (Tr. 21).  He also found that plaintiff suffers from depression and anxiety but that these impairments cause no more than minimal limitations in her ability to perform work-related activities and are thus non-severe (Tr. 11).  The ALJ found that the evidence in the record regarding plaintiff's symptoms and functional limitations did not support a finding that these impairments, considered singly or in combination, met or medically equaled the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 7).

1 (the "Listings"), with specific consideration given to Listings 1.00 (Musculoskeletal System) and 3.00 (Respiratory System) (Tr. 24).

The ALJ discussed the evidence in the record regarding plaintiff's medically determinable impairments–including treatment notes and consultative evaluations, along with plaintiff's hearing testimony and statements about the limiting effects of her impairments–and determined that plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work[2] with the following non-exertional limitations: plaintiff can perform occasional postural activities, may not climb ropes, ladders, and scaffolds, and can engage in only the occasional repetitive use of her hands for tasks such as keyboarding. She must avoid pulmonary irritants, extreme cold temperatures, wetness, and humidity, and can use a cane to ambulate as needed (Tr. 24).  Considering plaintiff's age (51 years at the alleged onset date), high school education, work experience (inability to perform past relevant work), and RFC, and relying on the testimony of a VE, the ALJ determined that jobs exist in significant numbers in the national economy that plaintiff can perform and that she has not been under a disability from the onset date to the date of the decision (Tr. 28-29).

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because (1) the RFC determination was

---

[2] "Light work" involves lifting no more than 20 pounds occasionally and 10 pounds frequently, "a good deal of walking or standing," or sitting with some pushing or pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

not supported by substantial evidence; and (2) the ALJ erred in his application of the

Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids").

*See* Item 10-1.  The government contends that the Commissioner's determination should

be affirmed because the ALJ's decision was made in accordance with the pertinent legal

standards and is based on substantial evidence in the record.  *See* Item 19.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the

Commissioner's decision, "[t]he findings of the Commissioner … as to any fact, if

supported by substantial evidence, shall be conclusive …."   42 U.S.C. § 405(g).

Substantial evidence is defined as evidence which "a reasonable mind might accept as

adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v.

Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only

to findings on basic evidentiary facts, but also to inferences and conclusions drawn from

the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing

*Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision

is limited, and the reviewing court may not try the case *de novo* or substitute its findings

for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of

Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record,

read as a whole, yields such evidence as would allow a reasonable mind to accept the

4

conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).   Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied … the court shall review only the question of conformity with [the] regulations …."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner."

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for DIB and SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 416.905(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …."  20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

7

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).   "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' "  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).  Where the record supports a finding that the claimant's non-exertional limitations would have little or no effect on the occupational base of unskilled work, the ALJ may properly rely on the Grids as a framework for decisionmaking, without consulting with a vocational expert, to satisfy the Commissioner's burden at the final step of the sequential evaluation.  *Cornell v. Colvin*, 2014 WL 1572342, at *9 (W.D.N.Y. Apr. 18, 2014) (citing *Zabala v. Astrue*, 595 F.3d 402, 410–11 (2d Cir. 2010); *Bapp*, 802 F.2d at 605-06).

III.     **The ALJ's Disability Determination**

In this case, ALJ Lewandowski determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since March 1, 2009, the alleged onset date (Tr. 21).   At step two, the ALJ determined that plaintiff's impairments - osteoarthritis, COPD, and carpal tunnel syndrome -  are "severe" as that term is defined in the regulations because they impose significant work-related functional limitations (Tr. 22).  As noted above, at step three the ALJ found that plaintiff's impairments did not meet or medically equal the severity of a listed impairment, with specific consideration given to the criteria of Listings 1.00 and 3.00 (Tr. 24).  Additionally, the ALJ considered plaintiff's mental impairments according to the "special technique" set forth in 20 C.F.R. §§ 40.1520a and 416.920a and found that plaintiff's depression and anxiety caused only mild limitations in her activities of daily living, social functioning, and concentration, persistence or pace, and that she had experienced no episodes of decompensation (Tr. 23).  Accordingly, the ALJ found these mental impairments to be non-severe.  The ALJ then found that plaintiff had the RFC for less than the full range of light work, with certain non-exertional limitations (Tr. 24).  In making this determination, the ALJ discussed plaintiff's hearing testimony and statements in the record regarding her symptoms, along with the objective medical evidence contained in the treatment records and a report obtained from consultative examiner Dr. Donna Miller, D.O. (Tr. 25-28).   Based upon his consideration of this evidence, the ALJ found that plaintiff's allegations regarding the limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC assessment, and that the RFC determination was "supported by the objective medical evidence, the claimant's treatment history, the claimant's admitted daily activities and the credible opinion

evidence." (Tr. 28).

Upon determining that plaintiff was unable to perform her past relevant work as a short order cook, at the final step of the sequential evaluation, the ALJ found that plaintiff was capable of making a successful adjustment to other work that exists in substantial numbers in the national economy, considering her age, education, work experience, and RFC (Tr. 28-29). The ALJ relied on the testimony of a VE, Ms. Dizon, who testified that plaintiff would be able to perform the requirements of representative occupations such as mail room clerk, ticket seller, and companion (Tr. 29). Additionally, the ALJ used Medical-Vocational Rule 202.14 as a framework for decision-making. Accordingly, the ALJ found that plaintiff was not under a disability within the meaning of the Act at any time from the alleged onset date through the date of the decision.

## IV.   Plaintiff's Motion

### A.  RFC Determination

Plaintiff first argues that the RFC determination was not based on substantial evidence. Specifically, she contends that there was no medical evidence that supported a finding that plaintiff was capable of performing a reduced range of light work, as opposed to simply sedentary work. The ALJ gave great weight to the opinion of consultative examiner Dr. Miller, but plaintiff contends that Dr. Miller's opinion was too vague to support the RFC finding of light work.

"Residual functional capacity" is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and

continuing basis." Social Security Ruling 96–8p, 1996 WL 374184, *2 (S.S.A.1996). In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 2013 WL 4647643, at *8 (W.D.N.Y.  Aug. 29, 2013), *aff'd*, 579 F. App'x 27 (2d Cir. 2014). The RFC determination "must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *see also Hamlin v. Colvin*, 2014 WL 4669244, at *6 (N.D.N.Y. Sept. 18, 2014).

Here, the ALJ described in detail the record evidence pertaining to plaintiff's impairments.  Specifically, the ALJ reviewed treatment notes from plaintiff's medical providers.  Plaintiff was involved n a motor vehicle accident on March 1, 2009 and first complained of knee pain during treatment following the accident.  Diagnostic imaging in April 2009 showed "low grade degenerative change" of the left knee and a "small amount of suprapatellar joint effusion" (Tr. 271-72). Plaintiff received a cortisone injection in the left knee on May 6, 2009 (Tr. 223), a second on September 16, 2009 (Tr. 227), and a third on December 2, 2009 (Tr. 228). On March 31, 2010, plaintiff received an injection of Synvisc One in the left knee (Tr. 229).[3]  X-rays taken on April 14, 2011 showed mild arthritis of the left and right lateral knees and severe arthritis of the left and right medial knees (Tr. 230-31).  Plaintiff received injections of Synvisc One in both knees on April 19, 2011(Tr. 233), January 19, 2012 (Tr. 352), and on August 16, 2012 (Tr. 367).

---

[3]  Synvisc One is an injection that supplements the fluid in the knee to help lubricate and cushion the joint. *See* www.synviscone.com.

The ALJ reviewed the report of consultative examiner Dr. Donna Miller, D.O. who performed a consultative examination on June 14, 2011.  Plaintiff appeared to be in no distress, had a normal gait and stance, was able to squat fully, and needed no assistance changing, getting on or off the examining table, or rising from a chair (Tr. 288).  She had no sensory deficits and had full strength in all extremities (Tr. 289).  Plaintiff reported that she receives Synvisc One injections which relieve her knee pain, but that eventually she will need knee replacement surgery (Tr. 287). Plaintiff's joints were stable and non-tender (Tr. 289).  Dr. Miller concluded that plaintiff had a mild limitation for repetitive bending, kneeling, squatting, lifting, carrying, and use of her hands, and should avoid dust, irritants, and tobacco exposure (Tr. 290).

Additionally, the ALJ considered plaintiff's testimony regarding her limitations. Plaintiff stated that her knee pain is eight out of ten on a daily basis (Tr. 42). She cannot squat or climb (Tr. 43).  Her pain from carpal tunnel syndrome is six out of ten (Tr. 47). She can stand for about ten minutes at a time or about one hour in an eight-hour day (Tr. 49).  Plaintiff can walk about 100 feet before she needs to rest and can walk for about one hour in an eight-hour day. *Id.*  She is unable to climb stairs, bend her knees, squat, or push and pull with her arms (Tr. 50-51).  Plaintiff stated that she cooks, does household chores, grocery shops with assistance, visits with friends and family, attends to her personal hygiene, drives a car, manages her finances, reads, and uses a computer (Tr. 54- 56, 61-63). At the time of the hearing, plaintiff occasionally cared for her grandchildren (Tr. 59).

After reviewing the record evidence, the ALJ concluded that plaintiff was able to perform a reduced range of light work with some additional limitations related to postural activities, climbing, repetitive hand motions, pulmonary irritants, and temperature, and the

12

use of a cane as needed (Tr. 24).  He relied on "the objective medical evidence, the claimant's treatment history, the claimant's admitted daily activities and the credible opinion evidence." (Tr. 28).

The Second Circuit has repeatedly cautioned that, in making the RFC determination, " 'the ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion .... [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him.' " *Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).  Here, none of plaintiff's treating physicians expressed an opinion that plaintiff was unable to work or in any way discussed her functional limitations. The only medical opinion available to the ALJ was the report of Dr. Miller, to which he gave "great weight." (Tr. 27).

The court has reviewed the record and finds that there is substantial evidence to support the ALJ's determination that plaintiff was able to perform a limited range of light work.  In order to control her knee pain, plaintiff had required only periodic Synvisc One injections in order to maintain functionality. The report of the consultative examiner, which was afforded great weight, indicated mild limitations for repetitive bending, kneeling, squatting, lifting, carrying, and use of plaintiff's hands, which was reflected in the RFC assessment.  Contrary to plaintiff's argument, the use of phrases such as "moderate" or "mild" by a consultative examiner does not automatically render the opinion impermissibly vague.  *See Rosenbauer v. Astrue,* 2014 WL 4187210, *16 (W.D.N.Y. aug. 22, 2014).  Dr.

13

Miller's opinion was based upon medical examination, evaluation, and observation, and the ALJ thus properly relied upon Dr. Miller's opinion to support his RFC assessment. *See Dier v. Colvin,* 2014 WL 2931400 at *4 (W.D.N.Y June 22, 2014) ("when, as here, [the doctor's opinions] are based on clinical findings and an examination of the claimant, the conclusion can serve as an adequate basis for the ALJ's ultimate conclusions) (internal quotation omitted).   The ALJ also found that plaintiff's subjective reports of disabling pain were exaggerated in light of the inconsistency between her reports of pain at the hearing and her lack of complaints to her treating physicians (Tr. 27).   The ALJ noted only mild limitations in plaintiff's activities of daily living, including cooking, cleaning, laundry, shopping as needed, driving, and babysitting her grandchildren (Tr. 23).   Finally, the ALJ noted that plaintiff received a referral for vocational training in May 2012 (Tr. 364). Plaintiff attended an orientation and reported in July 2012 that she intended to start vocational training in five months, when she finished babysitting her grandchildren (Tr. 365).

The ALJ based his RFC determination on the medical opinion of the consultative examiner, the relatively benign findings of plaintiff's treating physicians, plaintiff's treatment history, and her admitted daily activities.   There is no objective medical evidence or opinion to suggest that plaintiff is capable of only sedentary work activities.   The RFC determination is consistent with the medical opinion of record, which was specific enough to constitute substantial evidence.   Accordingly, the court finds that plaintiff is not entitled to remand or reversal on the basis that the RFC is not supported by substantial evidence.

### B.  Application of the Grids

Plaintiff further contends that, even assuming that the ALJ correctly assessed her RFC, he mechanically applied the Grids in such a way as to deny her benefits without

explanation, requiring remand.  Specifically, plaintiff contends that the ALJ should have considered her to be of advanced age, 55 or older.  Instead, the ALJ used Medical-Vocational Rule 202.14 as a framework for decision-making and considered her to be an individual "closely approaching advanced age" (age 50-54) (Tr. 28).  The court notes that plaintiff was born on January 5, 1958, her alleged onset of disability was March 1, 2009, her date last insured ("DLI") was June 30, 2010, and the ALJ issued his decision on December 17, 2012.  She was 51 years old on the alleged onset date and 52 on the DLI. Plaintiff was approximately 54 years and 11 months old at the time of the ALJ's decision. Application of the Grids to a person of advanced age would have resulted in a finding of disability, had the ALJ additionally made a finding that plaintiff had no transferable job skills. *See* Medical-Vocational Rule 202.06.[4]

The SSA has issued regulations regarding the consideration of a claimant's age as a vocational factor. The SSA

> will not apply the age categories mechanically in a borderline situation. If [a claimant] [is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant] [is] disabled, [the SSA] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case.

20 C.F.R. §§ 404.1563(b), 416.963(b).  Other Circuits have held that the appropriate date for analyzing a borderline situation is the last day of the plaintiff's insured status before the adjudication date. *See, e.g., Byers v. Astrue*, 506 F. App'x 788, 791 (10th Cir. 2012);

---

[4] The ALJ made no finding as to transferability of skills because it was not relevant to an application of the Grids for a person closely approaching advanced age.  *See* Medical-Vocational Rules 202.14, 202.15.

*Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068 (9th Cir. 2010); *see also Torres v. Comm'r of Soc. Servs.,* 2015 WL 5444888, * 10 (W.D.N.Y. Sept. 15, 2015) (borderline situation exists where claimant is only days or months away from the higher age category on his date last insured, and placing the claimant in that age category would have resulted in a findings of disabled under the Grids).

"Case law focusing on this issue is decisive. Mechanical application of the age criteria ... is not appropriate in borderline cases." *Hill v. Sullivan*, 769 F.Supp. 467, 470 (W.D.N.Y.1991); *see also Stafford v. Astrue,* 581 F.Supp.2d 456, 460 (W.D.N.Y. 2008); *Gravel v. Barnhart*, 360 F.Supp.2d 442, 446 n.8 (N.D.N.Y. 2005) ("[a]s provided by the Regulations, the Commissioner will not mechanically apply the age categories in borderline cases where the claimant is within a few days to a few months from reaching an older age category"), citing 20 C.F.R. § 416.963(b); *Davis v. Shalala*, 883 F.Supp. 828 (E.D.N.Y.1995) (awarding plaintiff the benefit of an older age category where plaintiff was three months from reaching it).

Under the circumstances of this case, plaintiff was not in a borderline age category. At the DLI, she was 52 years old and an individual "closely approaching advanced age." Moreover, the ALJ found that plaintiff was not capable of performing the full range of light work and so properly relied on the testimony of the VE to find that plaintiff was capable of making a transition to other work that exists in significant numbers in the local economy. Accordingly, I find that plaintiff is not entitled to the benefit of classification as a person of "advanced age" and is not entitled to remand on this basis.

**<u>CONCLUSION</u>**

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must be upheld.  Plaintiff's motion for judgment on the pleadings (Item 10) is denied, the defendant's cross motion (Item 19) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

_____\s\ John T. Curtin\_\_\_\_
JOHN T. CURTIN
United States District Judge

Dated: January 13, 2016